# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed January 4, 1897.

### FREDERICK MENKERT, JR., ET AL.

### VS.

### THE NORTHWESTERN FAMILY SUPPLY CO.

*D. E. Moore, Thomas C. Weeks* and *W. J. Garrett* for receivers.

*Baker & Leach* for Adolphus Meinl.

*E. J. Waring* for the Afro-American Publishing Co.

STOCKBRIDGE, J.—

On the 2nd of September, the petitioners were appointed Receivers of the defendant corporation, and nine days later filed the first of the (3) petitions involved in the present consideration. By their petition they asked to have set aside the transfer made by the Supply Company to Meinl of three machines, known as cash registers, and that Meinl should be required to deliver the said machines to the receivers. The next petition was likewise filed by the receivers against Meinl and filed on September 17, asking that the transfer of four horses,

wagons and harness, between the same parties be also set aside and these chattels delivered to the receivers to be by them sold for the benefit of the creditors of the corporation. The third petition, filed on the 23rd of September, by the Receivers against the Afro-Amercan Publishing Co., prayed that the transfer of certain printing presses might be declared invalid and the return of the property to the Receivers ordered. To all of these petitions answers were filed, and proof has been taken bearing thereon. For reasons which will be apparent hereafter, the 2nd and 3rd of these petitions will be first considered, and since the questions involved are practically the same, they can be treated together. It will be as well, in the first place, to determine whether the insolvent laws of the State have any application to corporations, since, if they do, the investigation will be materially shortened. It is well-settled, that up to 1894, they had no such application. The Legislature of that year passed an Act (Chapter 263), by which it was provided that "whenever any corporation in this State shall have been determined by legal proceedings to be insolvent, or shall be proven to be insolvent, by proof offered under any bill," &c., it shall be deemed to have surrendered its corporate rights, franchises and privileges, and *may be* adjudged to be insolvent. The whole of this Act is apparently directed to the winding up and putting out of existence the corporation, rather than of affording to the creditors of such bodies corporate the advantages to be given them under the provisions of the insolvent law. Nor is this Act materially aided by the preamble to it, which is susceptible of at least two constructions. It is, however, not now necessary to rely upon this Act, for Chapter 349 of the Acts of 1896, in the most clear and unmistakable terms places bodies corporate upon exactly the same footing with natural persons as regards the insolvent law, except only in the single matter of the discharge. If, therefore, such transfer of the horses and wagons to Meinl, and printing presses and machinery to the Afro-American Publishing Company would have been void had they been made by a natural person, they are clearly void when made by the corporation.

That the corporation was insolvent

has already been determined by the decree of this Court. That Meinl was a creditor of the corporation is admitted. That the effect of the transfer of the horses and wagons, whether the insolvent creditors of the corporation was known to him Meinl or not, was to give him a preference is equally clear, and when it is borne in mind that the transfer was made after the filing of the bill and but one day before the decree appointing the receiver, it cannot be understood upon any other hypothesis than an intent upon the part of the corporation or its officers to give to the said Meinl an undue preference, and therefore such transfer of the horses, wagons and harness is void under Sec. 8 of Art. 47 of the Code, and the said horses, wagons and harness must be turned over to the receivers.

In the case of the Afro-American Publishing Company.—That the printing presses, type and machines, belonged to the Northwestern Supply Company is proved by the evidence and it also appears that they were turned over to the Afro-American Publishing Company on the 15th of July, ten days before the bill in this case was filed and a month and a half before the appointment of the receivers. Had this been in reality a sale of those articles to a *bona fide* stranger for value, the Court would hesitate to disturb the transfer of the property, but such does not appear to be the case. It is true that the Afro-American Publishing Company was not a creditor of the Supply Company, but it is also proved, and not attempted to be denied, that the Afro-American Publishing Company never paid one cent for the articles in question, and which it is also testified, were held at a price of $3,000. The majority of the stockholders, if with propriety they can be designated by such a term, when they held no certificates of stock, of the Afro-American Publishing Company were both stockholders and creditors of the Northwestern Supply Company, and the indebtedness claimed to be due them by the Supply Company purchased, if it was a purchase at all, the printing outfit for the Publishing Company. In their position as stockholders and creditors of the Supply Company, and one of them, its president, they cannot have been ignorant of the financial condition of the Supply Company, and this transfer to the Publishing Company therefore was but an endeavor to protect and prefer their own claims by a transfer to another corporation under their control, of property which they did not have the hardihood to transfer to themselves directly. They cannot be said to occupy the position of an innocent purchaser for a valuable consideration, and there is so much of an atmosphere of deliberate fraud surrounding this transaction that the Court has no hesitation in pronouncing it an undue preference within the meaning of the Statute, and therefore void, and that the printing presses, types and machinery of whatever sort which were supposed to have been turned over by the Northwestern Supply Co. to the Afro-American Publishing Co. on the 15th day of July must be surrendered up to the receivers. As to the cash registers delivered to Meinl on the first day of September, the day before the appointment of the receivers, there is at first sight an added complication arising out of a contract of sale of these machines, by which the Cash Register Co., the vendor, retained the title to them until such time as they were fully paid for, and that the answer sets up as a defense to the petition that they were purchased not from the Supply Co. but from the Cash Register Co. The original sale from the Register Co. to the Supply Co. was of the character known as conditional sales which have of late occupied much of the attention of the Courts, and it must be said that the decisions construing such sales are by no means uniform, but these decisions are for the most part like the cases cited in the argument of counsel, dependent upon, or construction of local statutes, and therefor afford little precedent for a State which is without such statutory provisions. The best rule seems to be that where a sale is conditional, and the title is to remain in the vendor until the price is fully paid, any partial payments that may have been made are forfeited and irrevocable by the buyer upon the latter's default in paying the residue. Benjamin on Sales (4th Am. Edn., Sec. 429). But in the present case there is no evidence that any default had occurred; on the contrary, it appears that the respondent Meinl had advanced the sum of $30, that there might not be any default, and if there was no default, the Reg-

ister Company had no right to dispose of the property, it had not even the right to make the demand for the payment of the balance of the notes, which demand, it is testified, it did make.

There is no conflict in the evidence that it was Daly, the President of the Supply Company, and not an agent of the Register Company who first suggested to Meinl the purchase of the cash registers and if there had been no default, the Supply Company had the right to dispose of them subject to the vendor's lien of the Register Company, which right it assumed to exercise when Mr. Daly made the proposition. to Mr. Meinl, the transfer therefore, was one from the Supply Company to Meinl, subject to the lien of the Register Company, and that Company had nothing to do with it save to give its assent to the transfer, the necessity of which assent is by no means clear. Regarding this therefore, as a transfer from the Supply Company to Meinl for the reason given before it was void, and the cash registers must be turned over to the receivers. An order will be signed in conformity with the foregoing views.